UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Larry Williams, et al.,

            Petitioners,            Case No. 20-cv-2190 (ECT/LIB)

v.                           **REPORT AND RECOMMENDATION**

B. Birkholz, et al.,

            Respondents.

This matter comes before the undersigned United States Magistrate Judge upon Petitioners Larry Williams, Kim L. Powers, Ike Nesby, DaQuann Tyson, Antoine Clemons, Andre Wilborn, Robert Porter, Walter Hoskins, Arthur Moten, James Gilliam, and Hugh L. McGowan's (hereinafter collectively "Petitioners") Petition for Writ of Habeas Corpus. [Docket No. 1]. The present case has been referred to the undersigned pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth herein, the undersigned recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED without prejudice**.

**I.    Background**

On October 19, 2020, Petitioners initiated the present action by filing their Petition for Writ of Habeas Corpus. [Docket No. 1]. Petitioners are each incarcerated at the Federal Prison Camp in Duluth, Minnesota, (hereinafter "FPC Duluth"), and they allege that they are each "particularly vulnerable to serious illness or death if infected by COVID-19" based on the existence of their underlying medical conditions. (Pet., [Docket No. 1], ¶¶ 1–11, 30). Petitioners describe themselves as African American. (Id. ¶¶ 1–11).

As discussed more fully below, Petitioners allege that prison officials have responded to the COVID-19 pandemic in a constitutionally impermissible manner. (Id.). In addition to their own individual interest, Petitioner also seek to represent a class of inmates at FPC Duluth. (Id. ¶ 16–29).

II.     **The COVID-19 Pandemic**

As this Court has noted, COVID-19 is an infectious illness caused by a novel coronavirus which has become a global pandemic. According to publicly available information from the Center for Disease Control, as of late-June 2021, there were 33.4 million reported case and over 600,000 deaths in the United States of America.

The COVID-19 virus is thought to pass from one person to another through the expulsion of respiratory droplets (e.g., coughing or sneezing), but it is thought to also survive on various surfaces for varying periods of time. A person infected with COVID-19 may exhibit symptoms ranging from zero symptoms (asymptomatic COVID-19) to respiratory failure, kidney failure, and death. Thus, a person without symptoms may still spread the virus. See, https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days.

The Center for Disease Control (hereinafter the "CDC") has recommended that everyone wash their hands often; avoid close person to person contact through social distancing (the practice of maintaining a distance of six feet between yourself and others); receive a COVID-19 vaccine; cover their mouth and nose with a cloth cover when around others; routinely clean and disinfect frequently touched surfaces; wear a mask, if not fully vaccinated; and avoid poorly ventilated areas. See, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html. The CDC emphasizes that "[k]eeping distance from others is especially important for people who are at higher risk of getting very sick." Id.

According to the CDC, individuals with certain underlying medical conditions are at a higher risk for severe illness from COVID-19. See, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC identifies these conditions as: cancer; chronic kidney disease; chronic lung disease, including chronic obstructive pulmonary disease, moderate to severe asthma, interstitial lung disease, cystic fibrosis, and pulmonary hypertension; dementia and other neurological conditions; diabetes; down syndrome; heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, or hypertension; HIV infection; immunocompromised state; liver disease; obesity; pregnancy; hemoglobin blood disorders like sickle cell disease or thalassemia; smoking, former or current; solid organ or blood stem cell transplant; stroke or cerebrovascular disease affecting blood flow to the brain; and substance use disorder. Id.

In response to the COVID-19 virus, there have been at least three vaccinees developed and approved for use in helping prevent the spread of the COVID-19 virus. See, https://www.cdc.gov/vaccines/covid-19/eua/index.html. The Bureau of Prisons has begun vaccinating its prison staff and inmates, including some inmates and staff at FPC Duluth. See, https://www.bop.gov/coronavirus/index.jsp. According to publicly available information from the Bureau of Prisons, the BOP has completed fifty-three (53) "Full Staff Inoculations," and 177 "Full Inmate Inoculations." See, https://www.bop.gov/coronavirus/index.jsp.[1] The record now before the Court does not indicate whether any of the Petitioners have received a COVID-19 vaccine.

---

[1] There are approximately 288 total inmates at FPC Duluth. See, https://www.bop.gov/locations/institutions/dth/.

3

**III.   Petition. [Docket No. 1].**

Through the present habeas action, Petitioners seek "immediate release to Home Confinement via the CARES ACT . . . ." (Pet., [Docket No. 1], at 11).[2] In support of this request, Petitioners allege that, in light of the COVID-19 pandemic and the current conditions at FPC Duluth, their continued incarceration at FPC Duluth violates their Eighth Amendment rights to be free from cruel and unusual punishment. Specifically, Petitioners allege that the BOP and the prison staff at FPC Duluth has inadequately responded to the COVID-19 pandemic in a manner which places Petitioners "at a substantial risk of serious illness or death." (Id. ¶¶ 31–32).

Petitioners also allege that they are entitled to release, pursuant to the CARES Act, because prison officials have declined to transfer Petitioners, who are all African American, to home confinement while permitting "non-african americans" to be placed into home confinement in violation of the Equal Protection Clause. Petitioners contend that "COVID-19 is a real medical danger at [FPC Duluth] and by limiting release to non-african americans, FPC-Duluth's racial bias is exposed." (Id. at 10).

**A. CARES Act**

Throughout their Petition and other filings, Petitioners makes several specific references to the CARES Act, as well as, references to the Bureau of Prison staff authorizing the "release" of other inmates ostensibly pursuant to the authority granted by the CARES Act. (See, e.g., Pet., [Docket No. 1], ¶ 45; Id. at 10–11; Exhibits [Docket No. 1-1]; Williams Letter, [Docket No. 4], at 1; McGowan Decl. [Docket No. 14]). Liberally construing their filings in their favor, the

---

[2] Petitioners also "ask for free 'commissary store' face masks for all inmates . . . ." (Pet., [Docket No. 1], at 11). "[T]he heart of habeas corpus" relief is "immediate release or a speedier release from" confinement. Preiser v. Rodriguez, 411 U.S. 475, 498 (1973). Because Petitioners are here based on a habeas petition, their request for "free 'commissary store' face mask" is simply not available as it may have possibly been in a civil complaint. Because the Petitioners are pursuing a habeas petition seeking habeas relief, the Court need not further consider the civil-complaint type of relief sought. Moreover, the record demonstrates that face masks are available to Petitioners, but Petitioners are here requesting a specific type of mask.

4

Petition could be read as seeking review of the BOP's CARES Act decision for each of the individual Petitioners.

Title 18 U.S.C. § 3624 provides that the BOP, "shall to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under the conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). This authority granted to the BOP "may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Yet § 3624(c)(4) specifically provides that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of Bureau of Prisons under section 3621" which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. §§ 3624(c)(4); 3621(b).

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the bank of potential inmates who may be considered for home confinement in light of the emergency conditions caused by the COVID-19 virus and its effect on prison populations. See, CARES Act, Public Law 116-136, March 27, 2020, 134 Stat 281, Sec. 12003(b)(2), at *516. Thereafter, the BOP immediately began reviewing all inmates incarcerated at facilities which had experiences the first COVID-19 cases (FCI Oakdale, FCI Danbury, and FCI Elkton) and similarly situated facilities to determine which inmates were suitable for home confinement. Petitioners acknowledge that this process has begun at FPC Duluth.

As this Court and other Courts in this District have continually noted, the BOP has exclusive authority to determine the placement of prisoners. See, e.g., 18 U.S.C. § 3624(c)(2);

5

United States v. James, No. 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020). Nothing in the CARES Act, the First Step Act, or the Second Chance Act[3] altered the exclusivity of this authority to the BOP. See, e.g., 18 U.S.C. § 3624(c)(2); United States v. James, No. 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020); United States v. Kluge, No. 17-cr-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan. 14, 2020). The Second Chance Act of 2007, the First Step Act, and the CARES Act merely give eligible inmates the possibility of being considered for home confinement. See, Kluge, 2020 WL 209287, at *4. Although the various actions of Congress have expanded the potential opportunities for home confinement, Court have observed that "it is [the] BOP—not the courts—who decides whether home detention is appropriate . . . . Rather than mandate any particular home confinement decision, Congress instead directed [the] BOP to place prisoners on home confinement 'to the extent practicable.'" James, 2020 WL 1922568, at *2 (quoting Unites States v. Yates, No. 15-40063-01-DDC, 2019 WL 1779773, at *4 (D. Kan. Apr. 23, 2019)).

"Moreover, Courts have consistently held that placement questions are not reviewable." United States v. Vang, No. 16-cr-277 (DWF/KMM), 2020 WL 4704875, at *2 (D. Minn. Aug. 13, 2020) (collecting cases). "It is also well established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement." James, 2020 WL 1922568, at *2 (collecting cases). "Home confinement is a place of confinement." Id. (citing 18 U.S.C. § 3624(c)).

"[B]ecuase release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate." Vang, 2020 WL 4704875, at *3 (citing 18 U.S.C.

---

[3] The First Step Act, enacted into law on December 21, 2021, revised the provisions for early release to halfway houses and home confinement that had been in place under the Second Chance Act of 2007. See, 18 U.S.C. § 3624(c)(1).

6

3624(c)).[4] To the extent Petitioners seek review of the BOP's CARES Act decision related to each individual Petitioner, that decision is not reviewable by this Court.

### B. Habeas Relief Through § 2241

This leaves for this Court's consideration Petitioners' request for habeas relief in the form of "release" to home confinement based on their assertion that the BOP "is exacting cruel and unusual punishment through deliberate indifference to COVID-19." (Pet., [Docket No. 1], at 10).

---

[4] Although judicial review of BOP discretionary decisions such as placement decisions is generally precluded, judicial review is not precluded for any allegations that the BOP's action is contrary to established federal law, violates the Constitution, or exceeds statutory authority. See, Ambrose v. Jett, No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2013). As discussed below, however, such challenges cannot stem from a conditions of confinement claim as Petitioners seek to do in the present case. Further, even if the Court were to consider a challenge to the BOP's CARES Act decisions as being allegedly violative of the Equal Protection Clause, such a challenge would need to be raised by each individual Petitioner as opposed to the Petitioners as a collective as Petitioners attempt to do here. The BOP's decision on whether or not each Petitioner is to be transferred to home confinement is an individualized decision based on the circumstances of each Petitioner individually and the factors identified by the BOP. These factors and circumstances cannot be evaluated with regard to the Petitioners as a collective because the relevant circumstances of each Petitioner are varying. This need for individualized assessment and the problems resulting from Petitioners' collective challenge are illustrated by the fact that Petitioners have in fact undergone review by the BOP for transfer to home confinement with varying results. For example, unlike the other Petitioners in this case, BOP Health Services found that Petitioners Nesby, Clemons, and McGowan lacked a condition which placed them in a medical high risk category per applicable CDC guidelines. (Winger Decl., [Docket No. 8], ¶¶ 28, 32, 44). Petitioners also vary in their assigned PATTERN (Prisoner Assessment Tool Targeting Estimates Risk and Need) recidivism risk score. Petitioners Powers, Clemons, Wilborn, and Moten were determined to have a Low PATTERN score, while Petitioners Williams, Nesby, Tyson, Porter, Gilliam, and McGowan were assigned a Medium PATTERN score. (Id. ¶¶ 24, 26, 28, 30, 32, 34, 36, 40, 42, 44). Petitioner Hoskins was determined to have a High PATTERN score. (Id. ¶ 38). Preferences for consideration under the CARES Act is given to inmates with a Minimum PATTERN score. The consideration of each of the factors by the BOP is integral to the BOP's determination about a transfer to home confinement under the CARES Act. The many, material differences between the Petitioners demonstrates that any Equal Protection challenge to the BOP's home confinement related decision under the CARES Act would need to be brought by each individual Petitioner based on the circumstances of that Petitioner. Moreover, even if the Court were to consider the merits of Petitioners' collective Equal Protection challenge, Petitioners, on the record now before the Court, have failed to sufficiently allege any Equal Protection challenge based on the BOP's decision to not transfer Petitioners to home confinement under the CARES Act. "The Equal Protection Clause of the Fourteen Amendment provides that no state shall deny to any person within its jurisdiction the equal protection of the laws, and it applies to the federal government though the Due Process Clause of the Fifth Amendment." New Doe Child #1 v. United States, 901 F.3d 1015, 1027 (8th Cir. 2018) (citations and internal quotation marks omitted). "The Equal Protection Clause demands that similarly situated individuals be treated alike." Id.; see, Am. Fam. Ins. v. City of Minneapolis, 836 F.3d 918, 921 (8th Cir. 2016). On the record now before the Court, Petitioners have failed to allege the existence of any "similarly situated" inmates who were treated differently by the BOP in making determinations regarding home confinement pursuant to the CARES Act. Petitioners merely assert that the BOP is "limiting release" to home confinement "to non-african americans," and Petitioners reference certain "white" and "Hispanic" inmates who were transferred to home confinement, (Pet., [Docket No. 1], at 10; McGowan Decl. [Docket No. 14; Gilian Decl. [Docket No. 15]); Petitioners, however, fail to provide any factual allegations establishing that these other inmates are "similarly situated" to Petitioners relative to the relevant factors used in the determination about home confinement under the CARES Act. Petitioners have simply failed to allege any "similarly situated" persons who were treated differently.

Petitioners allege that, in light of the COVID-19 pandemic and the current conditions at FPC Duluth, their continued incarceration at FPC Duluth violates their Eighth Amendment rights to be free from cruel and unusual punishment. Specifically, Petitioners allege that the prison staff at FPC Duluth has responded to the COVID-19 pandemic in a constitutionally inadequate manner which places Petitioners "at a substantial risk of serious illness or death." (Id. ¶¶ 31–32).

"[T]he heart of habeas corpus" relief is "immediate release or a speedier release from" confinement. Preiser v. Rodriguez, 411 U.S. 475, 498 (1973). Petitioners argue that home confinement is a form of release; however, they acknowledge that this Court has reached the opposite conclusion.

Regardless of the exact nature of relief sought, however, the Court must now determine whether it retains the requisite subject matter jurisdiction to adjudicate Petitioners' habeas claims. See, Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Petitioners seek "release" through 28 U.S.C. § 2241. "Writs of habeas corpus may be granted by the Supreme Court, . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Under § 2241, a writ of habeas corpus shall not extend to any individual unless the individual "is in custody in violation of the Constitution or laws or treaties of the United States." Id.

The United States Supreme Court has "left open the question whether [inmates] might be able to challenge their confinement conditions via a petition for writ of habeas corpus." Ziglar v. Abbasi, 137 S.Ct. 1843, 1862–63 (2017). The Eighth Circuit Court of Appeals, however, has specifically concluded that habeas petitions are not the proper vehicle to remedy constitutional

claims relating to the conditions of confinement. See, Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014) (citing Kruger v. Ericksen, 77 F.3d 1071 (8th Cir. 1996)).

In the Eighth Circuit, a habeas petitioner under § 2241 can only challenge the fact or duration of confinement. See, e.g., Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014); Heck v. Humphrey, 512 U.S. 477, 481 (1994); Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996). Challenges to the conditions of confinement cannot be addressed in habeas proceedings. Mendez v. United States, No. 12-cv-28 (ADM/FLN), 2012 WL 1110138, at *2–3 (D. Minn. Jan. 24, 2012), report and recommendation adopted, 2012 WL 1110125 (D. Minn. Apr. 3, 2012). "If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." Kruger, 77 F.3d at 1073. "Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his custody, the district court lacks the power or subject matter jurisdiction to issue a writ." Id. In short, challenges to the conditions of confinement, unlike the length or legality of detention, are not cognizable claims in habeas petitions in the Eighth Circuit. Spencer v. Haynes, 774 F.3d 467, 469–70 (8th Cir. 2014); Kruger, 77 F.3d at 1073.

In the present case, Petitioners are raising a "conditions of confinement" claim under the guise of a habeas petition. Although Petitioners purport to seek "release," they argue that "release" is warranted based not on the basis of some invalidity in the fact or duration of their confinement, but rather, on the basis of the conditions at FPC Duluth. Petitioners specifically assert in their Petition that they "bring this action against" Respondents "on behalf of themselves and the class of prisoners held at FPC-Duluth who are at imminent risk of contracting COVID-19, which feeds on precisely the unsafe, congregate conditions in which they are held." (Pet., [Docket No. 1], at 2) (emphasis added). Petitioners' entire argument in the present action—

9

relative to their Eighth Amendment claim—is that Respondents have failed to properly respond to the COVID-19 pandemic which has created unsafe conditions at FPC Duluth. This is plainly a conditions of confinement claim.

The current Petition does not present any challenge to the validity of Petitioners' convictions or the length of their individually imposed terms of incarceration. Rather, Petitioners challenge the nature of their living conditions at FPC Duluth given the COVID-19 pandemic. (See, Pet. [Docket No. 1]). A writ of habeas corpus is not the proper vehicle for such a claim. See, e.g., Preiser v. Rodriguez, 411 U.S. 475, 489–90, 493 (1973); Spencer v. Haynes, 774 F.3d 467, 469–70 (8th Cir. 2014); Kruger, 77 F.3d at 1073–74.

In their Reply Memorandum, Petitioners assert that this Court has "subject matter jurisdiction under Habeas" because unlike the petitioners in Spencer and Kruger, Petitioners here seek "immediate release [or transfer] to Home Confinement." (Pet'rs' Reply, [Docket No. 13], at 5–8) (alteration in original). The Court finds this argument unpersuasive for several reasons.[5]

First, Petitioners do not expressly seek release from their terms of incarceration as the only relief which will cure the alleged constitutional infirmities. In fact, in their Petition, the Petitioners specifically request "transfer of the most medically vulnerable individuals to home confinement . . . ." (Pet., [Docket No. 1], at 2).

---

[5] The Court also finds unpersuasive Petitioners' reliance on the "quantum change doctrine." (See, Pet'rs' Reply, [Docket No. 13], at 12–13). Under the "quantum change doctrine," some Courts have "conclude that confinement in a traditional federal prison is 'qualitatively different' from community confinement, and thus justifies utilization of § 2241 for challenging BOP regulations regarding placement in a CCC" or halfway house. Silva v. Paul, No. 18-cv-2177 (ECT/ECW), 2019 WL 542945, at *5 (D. Minn. Jan. 7, 2019), report and recommendation adopted, 2019 WL 536668 (D. Minn. Feb. 11, 2019), appeal dismissed, No. 19-1424, 2019 WL 4145562 (8th Cir. May 20, 2019). Even assuming solely for the sake of argument that this reasoning also applied to home confinement, it is inapplicable in this case because Petitioners' seek relief based on a conditions of confinement claim. None of the cases that Petitioners rely on for their application of the "quantum change doctrine" involved a conditions of confinement claim. (See, Pet'rs' Reply, [Docket No. 13], at 12–13).

Home confinement is considered a place of confinement or imprisonment. See, e.g., United States v. Houck, No. 20-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021) (discussing home confinement as a place of imprisonment noting that "the district court correctly held that it did not have authority to change [defendant's] place of imprisonment to home confinement"); see, also, Elwood v. Jeter, 386 F.3d 842, 846 (8th Cir. 2004). A prisoner is transferred to home confinement not released to home confinement because home confinement is a place of incarceration. See, United States v. Houck, No. 20-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021).[6] Being transferred to home confinement is not a "release" for incarceration.

By Petitioners' own admissions, each of the constitutional violations alleged in the Petition, as they relate to Petitioners, would ostensibly be cured if Petitioners were immediately transferred to home confinement. Unlike a circumstance where a hypothetical petitioner might argue that release from confinement is the only possible cure for a constitutional infirmity, the Petitioners here concede that a transfer to a different form of confinement—home confinement—would cure the perceived constitutional infirmities alleged in the present case.[7]

---

[6] Petitioners adamantly contend that home confinement is release from custody. (See, Pet'rs' Reply, [Docket No. 13], at 6–9, 13–16). In support of their contention, Petitioners rely on hypertechnical readings of certain cases and definitions, (Id.), as well as, their belief that "'[h]ome' is not a prison." (Id. at 8). Petitioners' argument is unpersuasive. The Courts of this District and the Eighth Circuit Court of Appeals have consistently discussed home confinement, community confinement centers, and residential re-entry centers has places of confinement, incarceration, and imprisonment. Home confinement is a place of confinement or imprisonment; to hold otherwise would upend a plethora of well-established Eighth Circuit precedent. See, e.g., United States v. Houck, No. 20-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021); Elwood v. Jeter, 386 F.3d 842, 846 (8th Cir. 2004).

[7] As discussed above, to the extent Petitioners seek for this Court to review the Bureau of Prisons' decision regarding transfer to home confinement, that decision too is not reviewable by this Court. The Court lacks the subject matter jurisdiction to review the Bureau of Prisons' discretionary decision regarding transfer to home confinement. See, e.g., Simon v. L. LaRiva, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *4–7 (D. Minn. Mar. 10, 2016), (collecting cases) report and recommendation adopted, 2016 WL 1610603 (D. Minn. Apr. 21, 2016); Smith v. Warden of Duluth Prison Camp, No. 18-cv-2555 (WMW/LIB), 2019 WL 3325837, at *4–6 (D. Minn. Apr. 23, 2019), report and recommendation adopted as modified, 2019 WL 3323063 (D. Minn. July 24, 2019).

Second, Petitioners do not in fact directly challenge the fact of their confinement. Instead, Petitioners allege that the conditions of their confinement have rendered unconstitutional their continued incarceration. Put another way, if the <u>conditions</u> of which Petitioners now complain were eliminated (i.e., COVID-19 and the perceived lack of adequate safety precautions), then there would be no remaining challenge to Petitioners' continued incarceration.[8]

For these reasons, the Court concludes that it lacks the requisite subject matter jurisdiction to adjudicate the claims raised in the present habeas petition.[9] The undersigned thus recommends that the present Petition, [Docket No. 1], be **DENIED**.

---

[8] The Eighth Circuit Court of Appeals has held that in certain circumstances the Court, when confronted with a pro se conditions-of-confinement-based habeas petition, should liberally construe the petition to permit the petitioner to pursue his or her claim in a civil complaint under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), but only after securing the permission of the petitioner to do so. <u>See</u>, <u>Spencer v. Haynes</u>, 774 F.3d 467 (8th Cir. 2014). This conversion option is untenable in the present case. First, there is not a sole petitioner in this action; there are eleven petitioners. Each individual petitioner would be required to consent to the conversion of the Petition into a civil complaint. Moreover, as pro se parties, the petitioner cannot represent one another in this action, and therefore, even assuming solely for the sake of argument that all the petitioners individually submitted their consent to the conversion of the present case, permitting them to proceed in a single civil complaint would create a needlessly complicated legal action. The Court has previously discussed the complications of permitting multiple pro se parties to proceed in a single action; the myriad complications need not be repeated here. <u>See</u>, <u>Black Elk v. Roy</u>, No. 18-cv-3255 (DWF/LIB), 2019 WL 885641 (D. Minn. Feb. 5, 2019), <u>report and recommendation adopted</u>, 2019 WL 858671 (D. Minn. Feb. 22, 2019). Second, although Petitioners assert identical legal claims, the facts related to each Petitioner are substantively different, and the application of the legal claims will be substantially varied as it relates to each Petitioner. <u>See</u>, fn. 4, <u>supra</u>. If Petitioners seek transfer to home confinement or another remedy based on their condition of confinement, they must each bring a separate, individual civil rights complaint which will be governed by the Prisoner Litigation Reform Act (hereinafter the "PLRA"). The PLRA provides an avenue through which prisoners can seek release from custody or transfer to an alterative place of imprisonment based on illegal conditions of confinement. <u>See</u>, 18 U.S.C. § 3623; <u>Raz v. Lee</u>, 343 F.3d 936, 938 (8th Cir. 2003); <u>Taylor v. Rice</u>, No. 10-cv-4746 (SRN/LIB), 2012 WL 246038 (D. Minn. Jan. 25, 2012) (holding that federal prisoner may bring a claim for injunctive relief against BOP officials in their officially capacities for ongoing violations of the Eighth Amendment based on sovereign immunity waiver of Administrative Procedure Act), <u>report and recommendation adopted</u>, 2012 WL 246038 (D. Minn. Jan. 25, 2012).

[9] Because the Court concludes that it lacks the subject matter jurisdiction to adjudicate the Petitioners' claims, the Court does not address the remainder of the parties' arguments aimed at the merits of Petitioners' claims.

### IV.     Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED without prejudice**.

Dated: July 19, 2021                                                                 s/Leo I. Brisbois
                                                                                                   Hon. Leo I. Brisbois
                                                                                                   United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).